IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| IN RE: | In Proceedings Under Chapter 7 |
| ROGER WALKER<br>KIMBERLY WALKER | |
| Debtor(s). | Case No. 09-40935 |
| MAX ARNOLD & SONS, LLC | |
| Plaintiff(s), | Adv. No. 09-4121 |
| v. | |
| ROGER WALKER<br>KIMBERLY WALKER | |
| Defendant(s). | |

OPINION

THIS MATTER comes before the Court for trial on the plaintiff's Complaint to Determine Dischargeability of Debt. The issue before the Court is whether debts arising from dishonored corporate checks are non-dischargeable as to the individual corporate officers pursuant to 11 U.S.C. §§ 523(a)(2)(A) and 523(a)(4).

FACTS

Defendants Robert and Kimberly Walker were the sole shareholders, officers, and directors of KRW, Inc. of Marion ("KRW"). KRW operated two gas stations in Sturgis, Kentucky– Country Corner and Country Plaza. In June 2008, Robert Walker contacted plaintiff Max Arnold & Sons, LLC, a petroleum wholesaler, to purchase fuel for the Country Corner and Country Plaza locations. Mr. Walker phoned Jeffrey Waddle, plaintiff's Madisonville, Kentucky

-1-

bulk plant manager, in order to set up an account.  Because there was no existing business relationship between the plaintiff and the fuel recipients, Mr. Waddle told Mr. Walker that the fuel would need to be paid for at the time of delivery.  The testimony is unclear as to whether Robert Walker specifically identified himself as an officer of KRW when he spoke to Mr. Waddle. However, Mr. Walker did testify that he normally would have identified himself as calling on behalf of KRW, Inc./Country Corner and Country Plaza.   He further stated that he would have at least identified himself as calling on behalf of Country Plaza and Country Corner.

On June 6, 2008, the plaintiff delivered fuel to both the Country Corner and Country Plaza locations.  Invoices were submitted at the time of delivery to Country Corner and Country Plaza in the amounts of $4,451.50 and $12,241.35 respectively.  A store manager for KRW issued a check in the amount of $16,692.00 to the plaintiff's truck driver (Check #30184) in payment for the fuel.  The check was endorsed with the stamped signature of KRW's president, defendant Kimberly Walker.[1]  While the stamped signature did not indicate that Mrs. Walker was the president of KRW, the check was drawn on the KRW account and the name and address of KRW appeared on the check.

One week later, on June 13, 2008, the plaintiff made a second fuel delivery to Country Plaza.  The plaintiff's driver submitted an invoice in the amount of $17,365.00 and the store manager tendered a check to the driver in that amount (Check #30192).  Once again, the check was drawn on the account of KRW and signed with the stamped signature of Pamela Walker. There is a dispute between the parties as to whether Mr. Walker personally placed the second

---

[1] Mrs. Walker testified that while she had not been directly involved in the operation of the business during the 18 month period prior to the issuance of the check, she had previously authorized store managers to use her stamped signature for store purchases.

fuel order or whether it was placed by one of his store managers. However, while Jeffrey Waddle testified that he believed that he had spoken with Mr. Walker when all of the fuel orders were placed, he did not produce any records of those conversations, nor was he able to say with certainty that the orders were, in fact, placed by Mr. Walker.

Both of the checks in question were returned to the plaintiff due to insufficient funds.[2] KRW bank statements indicate that the account had a negative balance from June 2, 2008 through June 6, 2008, a $98.73 positive balance on June 9, 2008 and a negative balance from June 10, 2008 through June 19, 2008. While the KRW account had a positive balance of $48,337.63 on June 30, 2008, the records indicate that this was the only month in 2008 when KRW had a positive ending balance.

The defendants filed bankruptcy on June 1, 2009. At the time that the petition was filed, both checks remained unpaid. The plaintiff contends that the defendant debtors knew or should have known that the checks would not be paid on presentment and, therefore, its debt is non-dischargeable pursuant to 11 U.S.C. §§ 523(a)(2) and 523(a)(4). The debtors, however, maintain that the debt in question is not an individual debt but, rather, an obligation of KRW and, therefore, is not subject to dischargeability proceedings in their individual bankruptcy case.

DISCUSSION

The first issue that the Court must address is whether the debt in question is an obligation of the individual debtors or of KRW. Corporations are legal entities that are distinct from their

---

[2] Check number 30184 was returned on June 19, 2008 and check 30192 was returned on June 24, 2008.

shareholders, officers, and directors. *Semande v. Estes*, 374 Ill. App. 3d 468, 871 N.E.2d 268, 312 Ill. Dec. 868 (3rd Dist. 2007). However, courts will pierce the corporate veil and disregard the corporate entity where the corporation is "an alter ego or business conduit of the governing or dominant personality." *People v. V & M Industries, Inc.* 298 Ill. App. 3d 733, 739, 700 N.E.2d 746, 751, 233 Ill. Dec. 218, 223 (5th Dist. 1998). As the Illinois Supreme Court has explained:

> The doctrine of alter ego fastens liability on the individual who uses a corporation merely as an instrumentality to conduct his or her own personal business, and such liability arises from fraud or injustice perpetrated not on the corporation but on third persons dealing with the corporation. The corporate form may be disregarded only where equity requires the action to assist a third party.

*In re Rehabilitation of Centaur Insurance Co.,* 158 Ill.2d 166, 173, 632 N.E.2d 1015, 1018, 198 Ill.Dec. 404, 407 (1994), *quoting* 1 W. Fletcher, Private Corporations § 41.10 at 615 (rev. ed. 1990).

In determining whether piercing the corporate veil is appropriate, courts consider a number of factors, including (1) inadequate capitalization; (2) failure to issue stock; (3) failure to observe corporate formalities; (4) the payment of dividends; (5) the insolvency of the corporation; (6) the non-functioning of the other corporate officers or directors; (7) the absence of corporate records; and (8) whether the corporation is a mere facade for the operation of dominate stockholders. *V&M Industries*, 298 Ill. App. 3d 733, 700 N.E.2d 746 at 751, 233 Ill. Dec. 218 at 223 (5th Dist. 1998). Courts are often reluctant to pierce the corporate veil and, accordingly, the moving party "has the burden to make a *substantial* showing that the corporation is really a dummy or sham for another dominating entity." *Jacobsen v. Buffalo Rock Shooters Supply, Inc.*, 278 Ill. App. 3d 1084, 1088, 664 N.E.2d 328, 331, 216 Ill. Dec. 931, 934

(3rd Dist. 1996) (emphasis added).

The plaintiff in this case has not proven facts sufficient to pierce the corporate veil or to show that KRW was merely the alter ego of the defendants.  KRW maintained corporate records and observed corporate formalities.  Although some of the corporate obligations were paid in cash when KRW began having financial difficulties, a corporate bank account was maintained and used.  Further, Kentucky Secretary of State records verify that KRW was formed in 1996 and was in good standing until its corporate authority was revoked in November 2009.

Additionally, the Court finds no evidence to suggest that the defendants attempted to mislead the plaintiff into believing that the fuel was being purchased by any individual or entity other than KRW.  While defendant Roger Walker negotiated the terms of the sale, the fuel was delivered to two sites owned by KRW.  On two separate occasions, the store manager tendered and the plaintiff's driver accepted checks issued by KRW as payment for the fuel.  While Mr. Waddle testified that he was unaware that the checks were drawn on the KRW corporate account until they were returned for insufficient funds, it is clear that the plaintiff's delivery driver, acting as the plaintiff's agent, knew at the time that the first check was tendered that it was issued by KRW.  Even if the plaintiff had been unaware that it was dealing with KRW after receipt of the first corporate check, it certainly knew or had reason to know that the fuel was being purchased by KRW upon receiving a second check drawn on the KRW account.  For these reasons, the Court finds that the debt in question is an obligation of KRW and not defendants Roger and Kimberly Walker.

### *Dischargeability of Debt*

Even assuming, *arguendo,* that the Court had found that the debt owed to the plaintiff

was an individual obligation of the defendants, the plaintiff would still have been required to prove that the debt was non-dischargeable pursuant to §§ 523(a)(2) and (4) of the Bankruptcy Code. Under § 523(a), the party seeking to establish an exception to the discharge of a debt bears the burden of proof. *In re Scarlata*, 979 F.2d 521 (7th Cir. 1992). A creditor must meet the burden of proof by a preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279, 111 S. Ct. 654 (1991). In order to further the policy of providing the debtor with a "fresh start," exceptions to discharge are to be construed strictly against the creditor and liberally in favor of the debtor. *Meyer v. Rigdon*, 36 F.3d 1375 (7th Cir. 1994). Based on the evidence submitted at trial, the Court finds that the plaintiff has failed to meet its burden of proof.

<u>*Dischargeability of the Debt Pursuant to 11 U.S.C. § 523(a)(2)(A) and (B)*</u>[3].

Section 523(a)(2)(A) of the Bankruptcy Code excepts from discharge any debt

> (2) for money, property, services, or an extension, renewal or refinancing of credit, to the extent obtained, by–
> (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's . . . financial condition.

11 U.S.C. § 523(a)(2)(A). To establish a claim under this section, a creditor must prove (1) that the debtor made a representation to the creditor; (2) that the debtor's representation was false; (3) the debtor possessed an intent to deceive; (4) that the creditor relied on the debtor's misrepresentation which resulted in a loss to the creditor; and (5) that the creditor's reliance was justifiable. *Field v. Mans*, 516 U.S. 59, 116 S.Ct. 437 (1995).

---

[3]The plaintiff's complaint failed to state under which subsections of 11 U.S.C. § 523(a)(2) it was proceeding. Since only subsections (A) and (B) appear to be applicable, the Court will only address those sections.

The plaintiff argues that the act of tendering a check that is subsequently dishonored constitutes a "false representation" for purposes of 11 U.S.C. § 523(a)(2)(A). However, as the United States Supreme Court has noted, "a check is not a factual assertion at all" and it "serves only to direct the drawee bank to pay the face amounts to the bearer." *Williams v. United States*, 458 U.S. 279, 284. 102 S. Ct. 3088, 3091 73 L.Ed.2d 767 (1982). Citing *Williams*, the Seventh Circuit has specifically held that a bad check is not a misrepresentation for purposes of § 523(a)(2)(A). *See Goldberg Sec. Inc. v. Scarlata*, 797 F.2d 521, 525 (7th Cir. 1992).

Further, the plaintiff failed to prove that the *defendants* obtained anything as a result KRW writing bad checks. Section 523(a)(2)(A) requires not only a misrepresentation, but also that through the misrepresentation the debtor "obtained" either "money, property, services, or an extension, renewal or refinancing of credit." 11 U.S.C. § 523(a)(2)(A). Here, debtors Roger and Kimberly Walker "obtained" nothing. KRW– a separate and distinct entity– received the property *i.e.* fuel. Having failed to establish that the debtors made a false representation or that they obtained any money, property, or other services as a result of KRW's check being dishonored, the Court finds that the plaintiff has not met its burden of proof and, accordingly, its § 523(a)(2)(A) claim must fail.

The Court will now address whether the debt is non-dischargeable pursuant to 11 U.S.C. § 523(a)(2)(B). Section 523(a)(2)(B) excepts from discharge any debt

> (2) for money, property, services, or an extension, renewal or refinancing of credit, to the extent obtained by . . .
>     (B) use of a statement in writing–
>         (i) that is materially false;
>         (ii) respecting the debtor's . . . financial condition;
>         (iii) on which the creditor to whom the debtor is
>         liable . . . reasonably relied; and
>         (iv) that the debtor caused to be made or published

with the intent to deceive.

11 U.S.C. § 523(a)(2)(B).  To establish a claim pursuant to this section, the plaintiff must prove (1) that the debtor made a statement in writing; (2) the statement was materially false; (3) the statement concerned the debtor's financial condition; (4) the debtor intended to deceive the creditor; and (5) the creditor reasonably relied on the statement.  *In re Sherian*, 57 F.3d 627, 633 (7th Cir. 1995); *Phillips v. Napier*, 205 B.R. 900, 905 (Bankr. N.D. Ill. 1997).

Among other key elements, the plaintiff has failed to prove the existence of a written statement "respecting the debtor's financial condition."  To satisfy § 523(a)(2)(B), not only must there be a written statement, but that statement must do more than just prompt speculation about the debtor's finances.  It must be "sufficient to determine financial responsibility."  *In re Price*, 123 B.R. 42, 45 (Bankr. N.D. Ill. 1991).  Two uncollectible checks are not statements "respecting the debtor's financial condition."  As explained above, a bad check is not a statement of any kind, much less a false statement about the debtor's financial condition.  Thus, the plaintiff has not met its burden of proof as to § 523(a)(2)(B).

### *Dischargeability of the Debt Pursuant to 11 U.S.C. § 523(a)(4)*

Finally, the Court turns to the plaintiff's theory that the debt is non-dischargeable pursuant to 11 U.S.C. § 523(a)(4).  That section excepts from discharge any debt for "fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny."  11 U.S.C. § 523(a)(4).  As the Court explained in *In re Beetler*, 368 B.R. 20, 725 (Bankr. C.D. Ill. 2007)

> [i]n order to prevail under the fiduciary fraud portion of the statute, a creditor must prove that (1) a fiduciary relationship existed between [the creditor] and the debtor, and (2) fraud or defalcation was committed by the debtor in the course of that relationship.  *In re Monroe*, 304 B.R. 349 (Bankr. N.D.Ill. 2004).

> Whether a debtor is a fiduciary under Section 523(a)(4) is a question of federal law. *In re Frain*, 230 F.3d 1014, 1017 (7th Cir. 2000). The federal definition of fiduciary for this purpose is narrower than under state law. The existence of the trust must predate the breach. The equitable remedy of a constructive trust or resulting trust is not included within the term since the trust obligations do not exist until the wrong is committed. *Id.*; *Matter of Marchiando*, 13 F.3d 1111, 1115 (7th Cir. 1994). Even if a trust is nominally in existence, but where no real duties of a fiduciary character are imposed in advance of the breach, the absence of such preexisting duties takes the trust outside of the scope of Section 523(a)(4). *Marchiando*, 13 F.3d at 1116. A fiduciary relation that imposes real duties in advance of the breach is almost always characterized by a difference in knowledge or power between fiduciary and principal which gives the fiduciary a position of ascendancy over the principal. *Id.*

In examining the evidence presented in this matter, the Court finds absolutely no indication that a fiduciary relationship existed between the parties.

Further, the Court finds no evidence that the defendants committed larceny.[4]  Larceny, for purposes of 11 U.S.C. § 523(a)(4), is the "fraudulent and wrongful taking and carrying away of the property of another with intent to convert the property to the taker's use without the consent of the owner." *Collier's on Bankruptcy,* ¶ 523.10[2] at p. 523-77.  There is absolutely no evidence that either Roger or Kimberly Walker took plaintiff's property with the intent to convert it to their own use. If any property was "taken" in this case, it was taken by KRW, not the defendants.   Therefore, the plaintiff's arguments under § 523(a)(4) must too fail.

Based on the foregoing, the Court finds that the debt owed to plaintiff Max Arnold & Sons LLC is not an obligation of the individual defendants but, rather. of KRW.  Accordingly, the Court finds in favor of the defendants and against the plaintiff on the complaint and the

---

[4] As the plaintiff has failed to specify the basis of its § 523(a)(4) complaint, the Court must guess under which theory the plaintiff is proceeding.  Breach of fiduciary duty and larceny appear to be the only theories which would possibly apply in this case.

requested relief is DENIED.

A separate Order shall enter.

ENTERED: May 24, 2010

                                                /s/ Laura K Grandy
                                      UNITED STATES BANKRUPTCY JUDGE